The opinion of the court was delivered by
McEneky, J.
The accused was indicted for manslaughter, tried, convicted and sentenced to ten years at hard labor. He has appealed.
*862 The defendant was out on bail. His sureties had not surrendered him. During the trial the judge ordered him in custody of the-sheriff and remanded him to prison. His reason for so doing was that several parties had escaped pending trial. The order of the judge was, it seems, in this case unnecessary. There was no reason to suppose that the accused would attempt to escape. Had there been some evidence before the judge to lead to the conclusion that the accused would attempt to escape, there can be no doubt of his authority to prevent the escape by ordering the accused into custody. In the absence of such evidence the accused is entitled to the benefit of bail until after conviction. Art. 9, Oon. of 1879.
But this action of the judge formed and constituted no part of the trial. It raised no more presumption of his guilt than if he had been in prison unable to give bond for his appearance.
B. A. Soller, a witness, was interrogated by the District Attorney to prove threats made by the accused against the deceased. The question was in the usual form and was not leading, as it did not suggest the answer. The instructions of the District Attorney to the witness to answer the question yes or no were not objectionable. On cross-examination the accused had the opportunity to examine him at length on the same subject. The threats intended to be proved were admissible, as they were made the day before the homicide, and would enable the jury to better understand the defence of excusable homicide made by the defendant. It was unnecessary, as a foundation for the introduction of this evidence, that it should be first proved that the threats had been communicated to the deceased..
The authorities relied on by the accused apply to threats made by the deceased.
In the course of the trial, upon objection being made to a question propounded to a witness for the prosecution, the trial judge said : “ I will take down the question and the objection and let it go to the Supreme Court.” A bill was reserved to the statement “forthe reason that said remark of the court had a tendency to prejudice the minds of the members of the jury against the accused, because it was only on conviction that the matter under dispute could be reviewed by the Supreme Court.”
Thereis no force in the objection. If any inference as to the guilt of the accused could have been drawn from it, it was destroyed by the instructions of the judge, made immediately to the jury, todis *863 regard any remarks made by the court and counsel pending the discussion of this question.
Bills of exception five and six are to questions on direct and cross examinations, the answers to which would have been irrelevant and could have had no effect in determining the guilt or innocence of the accused.
Objection was made to the introduction in evidence of the dying declaration of the deceased, Reese W. Perkins, on the ground “that the declaration showed that the declarant still entertained feelings of unforgiveness against the accused, and that he was not at peace with the world and his God; that the declaration contained matters of opinion of declarant which were not admissible in evidence, and that as the accused was entitled to all of the declaration being considered by the jury, a part thereof could not be eliminated and the remainder admitted.”
The dying declaration must go to the jury in its entirety. 32 An. 1086.
The declaration went to the jury in its entirety. No part of it was eliminated.
The declarations of the deceased are admissible only to those things to which he would have been competent to testify if sworn in court.
They must therefore in general speak to facts only, and not to mere matters of opinion, and must be confined to what is relevant to the issue. 1 Greenleaf, Sec. 159.
They are admissible only where the death of the deceased is the subject of the charge and the circumstances of the death are the subject of the dying declaration. 1 Greenleaf, 156.
The declaration of the deceased was confined to those things about which he would have been competent to testify,.if a witness, as to the circumstances under which he received the mortal wound.
Dr. James Ware, who gave evidence as to the dying declarations of the deceased and to whom they were made, says in his testimony that the deceased prayed “warmly and most emphatically” during the two or three hours he was with him. The witness said: “There was nothing in his statements or acts to show that he was otherwise but at peace with the world and his God.” He did not state specifically that he was at peace with the world and his God. *864 This was not necessary. The facts were given in the declaration which went to the jury, and they were the judges as to the conclusions to be drawn from them as detailed in the declaration. The statement in the dying declaration, “I have been shot by a man that I had no reason to expect a shot from,” or “that ought not to have shot me; he had no reason to shoot me; there was no offence given,” are not incompetent, as they relate to a fact, and not to an opinion. Wharton, Criminal Evidence, Sec. 294.
The dying declaration was given under a sense of impending death and of religious accountability, was confined to facts connected with the circumstances which caused the mortal wound, and was admissible in evidence against the accused.
Judgment affirmed.